**HOLMAN v. CROSS et al.**
**No. 6616.**

Circuit Court of Appeals, Sixth Circuit.
March 7, 1935.

910

Staige Davis and D. C. T. Davis, Jr., both of Charleston, W. Va. (Leo W. Hoffman and Clare E. Hoffman, both of Allegan, Mich., on the brief), for appellant.

O. S. Cross, of Holland, Mich., and W. N. Snow, of Grand Rapids, Mich. (Diekema, Cross & Ten Cate, of Holland, Mich., and Knappen, Uhl, Bryant & Snow, of Grand Rapids, Mich., on the brief), for appellees.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The receiver of a national bank sought to recover from officers and directors losses on loans on the ground that they were made in violation of statutes, or negligently and improvidently. Reference to a master resulted in a report of substantial liability, based upon findings of fact and conclusions of law, to which the defendants Cross and Moore excepted, and which were in many respects set aside, and in some respects sustained, by the District Judge on review. An appeal by the receiver followed.

Cross was president, Moore, cashier, and both directors of the First National Bank of Allegan when it failed. The master held Cross liable for (a)[1] losses on loans made while the bank's deposit in the Federal Reserve Bank was deficient; (b) losses on loans which depleted the capital stock and surplus of the bank, or exceeded its statutory limitation; (e) losses on loans negligently or improvidently made; and (f) losses on miscellaneous items. He held Moore liable on losses under headings (a) and (e).

The first question presented is whether under the National Banking Act officers and directors of a national bank have a civil liability for losses resulting from loans made while the bank's deposit in the Federal Reserve Bank is deficient. Such liability is asserted by the receiver under title 12, USCA, relating to the Federal Reserve System, including sections 461, 462, 464, 503, and 93, and under section 2 of the Federal Reserve Act of December 23, 1913 (38 Stat. 251). Section 461 defines demand and time deposits; section 462 provides that a member bank, if not in a reserve or central reserve city, shall maintain with the Federal Reserve Bank of its district an actual net balance equal to not less than 7 per cent. of its demand deposits, and 3 per cent. of its time deposits. Section 464 permits the member bank to check against its reserve under regulations and subject to such penalties as may be prescribed by the Federal Reserve Board, with the following proviso: "That no bank shall at any time make new loans or shall pay any dividends unless and until the total balance required by law is fully restored."

Section 503 imposes individual and personal civil liability upon every director and officer who knowingly violates or permits the violation of sections 375, 376, 593, 594, and 595, of the banking act, for damages which the member bank, its shareholders or

---

1 Enumeration as listed in master's report and findings of District Court.

other persons, sustain in consequence of such violation. Section 93 provides for forfeiture of a national bank's charter for violations, to be determined and adjudged by the court, and contains the same provisions as to the personal civil liability of directors as is contained in section 503.

Section 2 of the Federal Reserve Act (12 USCA p. 360 note) has the following provision: "Should any national banking association in the United States now organized fail within one year after the passage of this Act to become a member bank or fail to comply with any of the provisions of this Act applicable thereto, all of the rights, privileges, and franchises of such association granted to it under the national bank Act, or under the provisions of this Act, shall be thereby forfeited. Any noncompliance with or violation of this Act shall, however, be determined and adjudged by any court of the United States of competent jurisdiction in a suit brought for that purpose in the district or territory in which such bank is located, under direction of the Federal Reserve Board, by the Comptroller of the Currency in his own name before the association shall be declared dissolved. In cases of such noncompliance or violation, other than the failure to become a member bank under the provisions of this Act, every director who participated in or assented to the same shall be held liable in his personal or individual capacity for all damages which said bank, its shareholders, or any other person shall have sustained in consequence of such violation."

It will be noted that section 503 does not impose any civil liability upon directors for violating the provisions of section 464, which prohibits the making of loans by a member bank when its reserve deposit is impaired, and that section contains no penalty. It was therefore contended by the defendants that no civil liability could be imposed upon them by virtue of section 503 read in connection with section 464; that while section 2 of the Federal Reserve Act purports to impose such civil liability, it became by virtue of its terms obsolete one year after its enactment, and in any event was impliedly repealed by section 503 of 12 US CA section 5 of the Act of September 26, 1918. These contentions draw persuasiveness from the fact that the sixth and seventh paragraphs of section 2, wherein the quoted provision. is found, have been.omitted from the United States Code, and by the comment in the compiler's note to title 12, USCA p.

360. The District Judge found it unnecessary, however, to rule upon this contention, and for reasons presently to be developed, we find it likewise unnecessary to pass upon it.

Assuming (without deciding, because decision is not required) that section 2 of the Federal Reserve Act was in force at the times the loans in question were made, and for similar reason passing the question as to whether section 93 of title 12 creates a civil individual liability upon directors for violating the Federal Reserve Act, as well as for violating the National Banking Act (12 USCA § 21 et seq.), we observe that each of the disputed sections contains a condition limiting the liability of directors to damages "sustained in consequence of such violation." The District Judge concluded that this phrase conditioned the civil liability of directors upon the existence of a causal relation between violations of the statute and the loss which followed. It would seem from a study of the cases that even in the absence of words of limitation the violation of statutory duty may support liability only where the loss or injury results proximately from such violation. This is undoubtedly the rule where an absolute liability, regardless of the existence of negligence, is imposed by statute, as in the Safety Appliance Act (15 USCA § 1 et seq.). Lang v. New York Cent. R. Co., 255 U. S. 455, 41 S. Ct. 381, 65 L. Ed. 729; St. Louis & San Francisco R. Co. v. Conarty, 238 U. S. 243, 35 S. Ct. 785, 59 L. Ed. 1290; and in this court see Reetz v. Chicago & Erie R. R. Co., 46 F.(2d) 50. Such, of course, has also been the applicable rule in negligence cases, where the duty is one not imposed by statute, but arises under the common law. Detroit, Grand Haven & Milwaukee R. Co. v. Maldonado, 59 F.(2d) 911 (C. C. A. 6); Bobango v. Erie R. Co., 57 F.(2d) 667 (C. C. A. 6); Pere Marquette R. Co. v. Haskins, 62 F.(2d) 806 (C. C. A. 6). Here, however, the express language of the statute removes all opportunity for controversy. The phrase "in consequence of such violation" cannot be ignored, for no rule of statutory construction has been more definitely stated or more often repeated than the cardinal rule that "Significance and effect shall, if possible, be accorded to every word." Ex parte Public National Bank of New York, 278 U. S. 101, 104, 49 S. Ct. 7, 73 L. Ed. 503.

The District Judge could see no causal relation between loans which otherwise might properly be made, and which resulted

in loss only because of conditions arising subsequent to the loans, and the existence at the time the loans were made of a deficiency in the Federal Reserve deposit. In answer the receiver urges that the courts, in imposing or sustaining liability of directors for other violations of the National Banking Law or the Federal Reserve Act, such as loaning in excess of 10 per cent. of capital and surplus, on unencumbered farm lands or other real estate in excess of 50 per cent. of value, or upon real estate located more than 100 miles from the situs of the bank, or in excess of statutory limitation, have not considered the question of causal connection between violation and loss. Corsicana National Bank v. Johnson, 251 U. S. 68, 84, 40 S. Ct. 82, 64 L. Ed. 141; McRoberts v. Spaulding (D. C.) 32 F.(2d) 315, 320; Briggs v. Spaulding, 141 U. S. 132, 146, 11 S. Ct. 924, 35 L. Ed. 662; Gamble v. Brown (C. C. A.) 29 F.(2d) 366, 376. The logic of the District Court commends itself to us. We agree that loans otherwise proper, though made while the reserve deposit was deficient, would still, in all probability, have been made had the statute been complied with. Moreover, the record discloses that in most, if not in all, cases, the reserve was restored before the loss occurred. A defective appliance, fully repaired, cannot be the legal cause of injury, nor an infirmity, cured, the cause of death, however else it may result. It was by a parity of reasoning that the Supreme Court in the Corsicana Bank Case, supra, declined to limit liability of directors for losses resulting from a loan in excess of the legal limit to the amount of the excess, the court holding that there could be no legal presumption that the borrower, refused an excessive loan, would have accepted a loan within the limit. The presumption absent, the causal relation in such case between violation and loss at once appears, as it does between losses and other prohibited loans. Where, however, every reasonable presumption is that the loan would have been made had there been no violation, it cannot be said that the violation was the proximate cause of the loss. In Allen v. Luke, 163 F. 1018, 1019 (C. C. Mass.), Judge Lowell illustrates a loss resulting from a deficiency in deposit in construing a provision in section 5191, Revised Statutes, similar to that here involved: "If this [reserve] were depleted below the statutory limit, the bank might suffer loss for want of cash on hand, and for such a loss, if one occurred, the defendants might be liable, although the loans made while the reserve was below the limit were paid at maturity."

Finally, in this connection, it is clear that the mandate of the statute here involved was intended not to protect member banks against loss, but to protect the Federal Reserve System in maintaining an adequate compulsory reserve to enable reserve banks to furnish an elastic currency and to afford means for rediscounting commercial paper. The injury intended to be prevented by the law alleged to have been violated, is not the injury here complained of. It follows that the court did not err in sustaining the exceptions of the defendant to the findings and conclusions of the master imposing upon them an individual liability for losses which resulted from loans made while the deposit with the Reserve Bank was impaired.

With respect to losses resulting from loans which depleted the capital and surplus of the bank, or which exceeded statutory limits, we think the court correctly applied the law in holding appellees free from liability where the loans were made without their knowledge or participation, and were due to no lack of ordinary care and diligence on their part. A bank director is not an insurer of the bank against losses in transactions made by others without his knowledge, and is accountable only when he fails to exercise due care in their supervision. Briggs v. Spaulding, supra. It will be noted that the liability imposed upon directors by section 93 and section 503 of title 12, is one for violation committed knowingly, or knowingly permitted.

The rulings of the court in this respect are best illustrated by its findings in the case of loans made by Barker, cashier of the bank prior to Moore's appointment. Barker owned substantially 50 per cent. of the stock of the bank. He had long been held in high regard in the community, and occupied positions of trust and responsibility. In 1925 he placed invalid or valueless mortgages among the assets of the bank, crediting his personal account with the proceeds. He also abstracted cash and made entries to cover such abstractions, which deceived the bank's directors. Subsequently, Barker was convicted and sent to prison. There is no credible evidence to charge the appellees with knowledge of Barker's defalcations, or that they had occasion to doubt his fidelity until long after the loans were made. We find no error in the sustaining of exceptions to the master's findings in this respect.

Under the classification of improvident loans, for which liability was imposed by the master, were mortgages accepted by the directors from Barker in partial restitution of his defalcations. These mortgages later proved worthless. The court, looking through the form of the transaction to its essential character, held that the mortgages were not loans, nor within the condemnation of the statute. We agree with his view. The acceptance of security for the purpose of minimizing a loss previously made was demanded by the highest standard of duty that could be applied to the directors, and not an act to be penalized as a violation of the statute because of the form taken by such security.

It would serve no useful purpose, and would unduly extend this opinion, were we to analyze the evidence in respect to all of the loans upon which losses are claimed, due either to alleged negligence, depletion of capital and surplus, or in excess of the statutory limit. It is all carefully reviewed by the District Judge in his exhaustive opinion. It is sufficient to say that we have carefully explored the record, and are unable to find error either in the rejection of findings as unsupported by evidence, or in the application of the law. It is to be noted that with respect to defendants who did not except, the court confirmed the master's report upon the facts, but noticed such legal conclusions as found no support therefrom under the rule of Smith v. Scibel et al. (D. C.) 258 F. 454. This course we approve.

The decree below is sustained.