**BROWN LEASING COMPANY, Formerly Known as Capital Leasing Company, Plaintiff–Appellant,**

v.

**COSMOPOLITAN BANCORP, INCORPORATED, Gerald J. DeNicholas, James Wells, et al., Defendants–Appellees.**

No. 94–1023.

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1994.

Decided Dec. 19, 1994.

Bruce R. Braun, Winston & Strawn, Chicago, IL, Michael Silverman, Scott E. Tuck-man, Kwiatt & Silverman, Chicago, IL, Michael J. O'Rourke (argued), Thomas G. Griffin (argued), Michael C. Moody, Kelly A. McCloskey, O'Rourke & Griffin, Chicago, IL, for Brown Leasing Co.

Jeffrey Schulman, Wolin & Rosen, Chicago, IL, for Cosmopolitan Bancorp, Inc.

Phillip J. Zisook, Stuart Berks, Deutsch, Levy & Engel, Chicago, IL, for Gerald J. DeNicholas.

Robert G. Heckenkamp, Heckenkamp, Simhauser & Labarre, Springfield, IL, Michael E. Dowd, Dowd & Dowd, Chicago, IL, for Charles E. Robbins, Dennis Polk.

Jeffrey Schulman, Philip S. Wolin, Wolin & Rosen, Chicago, IL, for Myron P. Alcock, James S. Stefo, Richard C. Rosenow.

Robert A. Novelle, Joel A. Whitehouse, Vincent F. Dipiero, Vincent Petrosino, Serpico, Novelle & Navigato, Chicago, IL, Paul V. Carelli, III, Carelli & Miller, Las Vegas, NV, for Carelli Family Trust, Carol A. Carelli, Michael V. Carelli, Paul V. Carelli, III.

Brad S. Grayson, Aaron E. Hoffman, William L. Sharp, Schwartz & Freeman, Chicago, IL, for Robert G. Cunningham.

Michael J. Newman, Ruchim & Associates, Wilmette, IL, Michael A. Goldhirsh, Sam Borek, Borek & Newman, Wilmette, IL, for Fred R. Eiseman.

Franklin P. Auwarter (argued), Charles F. Regan, Mayer, Brown & Platt, Chicago, IL, for Mary A. Kirchschlager.

Gary Senner, John I. Grossbart, Duane C. Quaini, Diane M. Mellett, Sonnenschein, Nath & Rosenthal, Chicago, IL, for Errol L. Stone.

Edward C. Fitzpatrick, Michael J. Gaertner, Lord, Bissell & Brook, Chicago, IL, for Antonio Guillen, Susan Kastner.

Richard M. Randick, pro se.

O. Kenneth Thomas, Peotone, IL, for Richard M. Randick.

Don Dybus, pro se.

Before ENGEL,* BAUER and CUDAHY, Circuit Judges.

ENGEL, Circuit Judge.

The principal issue in this case is whether plaintiffs must plead reliance in order to state a claim under federal bank reporting laws. Plaintiff-appellant Brown Leasing filed suit against defendants-appellees alleging violation of the National Bank Act (NBA) and the Federal Reserve Act (FRA). Following the district court's dismissal of its suit, Brown Leasing moved for leave to file a second amended complaint, and now it timely appeals the denial of that motion. Since the motion attempts to re-open the case, it is a final order over which we have jurisdiction. However, Brown Leasing's second amended complaint again fails to plead that it relied to its detriment on misleading statements filed by defendant-appellee Cosmopolitan Bank. Because we agree that the NBA and the FRA require a showing of detrimental reliance to prove causation of plaintiff's damages, we affirm the district court's denial of leave to file a third deficient complaint.

Cosmopolitan Bank (Cosmopolitan) was a subsidiary of Cosmopolitan Bancorp Inc. (CBI). Gerald DeNicholas was Executive Vice President, Chief Financial Officer and Director of Cosmopolitan and President, Secretary, Director, and Shareholder of CBI; Alex Vercillo was President, Chief Operating Officer and Director of Cosmopolitan and Vice President, Director, and Shareholder of CBI. In June of 1989, DeNicholas and Vercillo asked Brown Leasing to extend a one-time $1,950,000 loan to Illinois State Treasurer and Cosmopolitan customer James Cosentino so that Cosentino could pay off an overdraft at the bank. According to the explanation offered to Brown Leasing, federal regulations prevented Cosmopolitan from extending Cosentino any more credit until he paid his overdraft. To provide Brown Leasing with the funds to lend Cosentino, Cosmopolitan paid Brown Leasing $1,986,490 for participation interests in four outstanding loans that Brown Leasing had made to others.

In return for the loan to Cosentino, Brown Leasing received a note for $1,950,000 signed by Cosentino and cosigned by James Wells, president of Cosmopolitan, in his personal capacity. Brown Leasing also received a "Standby Letter of Guaranty" (Guaranty) issued on CBI letterhead signed by DeNicholas, as President of CBI, and Vercillo, as Vice President of CBI, which obligated the "issuer" of the Guaranty to buy back the Cosentino loan in the event of default. Brown Leasing claims that it understood the "issuer" to be Cosmopolitan, despite the fact that it was drafted on CBI letterhead, and that the note was reinforced by an oral promise that Cosmopolitan would buy back the loan if defaulted. Cosmopolitan did not record the Cosmopolitan–Cosentino–Brown Leasing credit arrangement in its books or records, nor did it include any of this information in its quarterly reports to federal regulators.

In April of 1990, upon request by DeNicholas and Vercillo, Brown Leasing agreed to restructure the loan. This request appears to have been motivated by a federal investigation into alleged misappropriation of funds by defendant Wells. The original Cosentino/Wells note was cancelled and replaced by: (1) a $1,000,000 note from Cosentino guaranteed by original defendant Michael High, (2) a $450,000 note from Cosentino, (3) a $250,000 note from original defendant Charles Robbins, and (4) a $250,000 note from original defendant Dennis Polk. The Guaranty remained undisturbed, as apparently did the verbal promise that Cosmopolitan would buy back the loan pursuant to the Guaranty in the event of default. Soon after the final restructuring, the Cosentino, Robbins and Polk notes went into default. In December, 1990, Brown Leasing invoked the Guaranty and requested that Cosmopolitan buy back the notes, but the bank refused. In May of 1991, Cosmopolitan was taken over by the FDIC.

Brown Leasing originally filed suit in state court against Cosmopolitan, CBI, and numerous officers and directors alleging, among

* Honorable Albert J. Engel, of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

other things, that the Guaranty obligated Cosmopolitan to remedy Cosentino's default. After being appointed as receiver, the FDIC was substituted as defendant in Cosmopolitan's place and removed the case to federal court. The FDIC successfully moved for dismissal on the grounds that the Guaranty was an obligation of CBI and not Cosmopolitan; therefore, no valid written agreement existed, as it must according to *D'Oench Duhme & Co. v. Federal Deposit Ins. Corp.*[1] and 12 U.S.C. § 1823(e) to obligate the FDIC to assume the Cosentino debt.

Brown Leasing then amended its complaint, for the first time naming as defendants the outside directors who are appellees in this case. The amended complaint included state law claims pendent to a federal law claim alleging a violation of § 93/161 of the NBA[2] for the Cosmopolitan directors' willful or reckless failure accurately to record the details of the credit arrangement in its quarterly reports to federal regulators. The complaint was dismissed for failure to state a claim under § 93/161 of the NBA because Brown Leasing did not plead that it relied upon the misleading filings: "Brown Leasing's amended complaint is wanting of any allegation of reliance on these misleading records." *Brown Leasing, Inc. v. Federal Deposit Ins. Corp.*, No. 91–C3729, 1993 WL 115552, at *5 (N.D.Ill. March 24, 1993).

■ Brown Leasing moved for leave to file a second amended complaint which, aside from the state law claims, sought to revise its NBA § 93/161 claim and to add a new claim under § 503/1005 of the FRA.[3] The district

---

1. 315 U.S. 447, 460, 62 S.Ct. 676, 86 L.Ed. 956 (1942), *reh'g denied*, 315 U.S. 830, 62 S.Ct. 910, 86 L.Ed. 1224 (1942). This case and its codification preclude the enforcement of oral agreements against the FDIC. Once the Standby Guaranty was held to be an obligation of CBI and not Cosmopolitan, Cosentino could only rely upon the alleged oral representations of Vercillo and DeNicholas which, accordingly, were insufficient.

2. Section 93(a) of the NBA codifies director liability for knowing violations of the NBA. Section 161(a) requires officers and directors of the bank to file truthful reports regarding the bank's financial condition with the Comptroller of the Currency. For the sake of simplicity, the alleged violation in this case will be referred to throughout this opinion as a § 93/161 violation.

   12 U.S.C. 93(a) states:
   **§ 93. Violations of provisions of chapter (a) Forfeiture of franchise; personal liability of directors**
   If the directors of any national banking association shall knowingly violate, or knowingly permit any of the officers, agents, or servants of the association to violate any of the provisions of this chapter, all the rights, privileges, and franchises of the association shall be thereby forfeited.... And in cases of such violation, every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or any other person, shall have sustained in consequence of such violation.
   12 U.S.C. 161 provides:
   **§ 161. Reports to the Comptroller of the Currency (a) Reports of condition; forms; contents; date of making; publication**

   Every association shall make reports of condition to the Comptroller of the Currency in accordance with the Federal Deposit Insurance Act [12 U.S.C.A. § 1811 et seq.].... Each report of condition shall contain a declaration by the president, a vice president, the cashier, or by any other officer designated by the board of directors of the bank to make such declaration, that the report is true and correct to the best of his knowledge and belief. The correctness of the report of condition shall be attested by the signatures of at least three of the directors of the bank other than the officer making such declaration, with the declaration that the report has been examined by them and to the best of their knowledge and belief is true and correct....

3. Similar to a § 93/161 violation, 12 U.S.C. § 503, codifying officer and director liability, is triggered by a violation of 18 U.S.C. § 1005, which codifies liability for the willful failure on the part of a "member bank" in the federal reserve system accurately to record details of the bank's financial condition in its books, records, or statements. This will be referred to as a § 503/1005 violation.

   12 U.S.C. § 503 states:
   **§ 503. Liability of directors and officers of member banks**
   If the directors or officers of any member bank shall knowingly violate or permit any of the agents, officers, or directors of any member bank to violate any of the provisions of sections 375, 375a, 375b, and 376 of this title or regulations of the board made under authority thereof, or any of the provisions of sections 212, 213, 214, 215, 655, 1005, 1014, 1906, or 1909 of Title 18, every director and officer participating in or assenting to such violation shall be held liable in his personal and individual capacity for all damages which

court denied this motion, holding that the second amended complaint failed to state a claim because, once again, it failed to allege requisite "reliance" with regard to both the NBA § 93/161 claim and the FRA § 503/1005 claim. *Brown Leasing Co. v. Federal Deposit Ins. Corp.*, 833 F.Supp. 672, 677 (N.D.Ill. 1993). We review this decision for an abuse of discretion. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 819 (7th Cir.1991).

Brown Leasing contests the district court holding that "to state adequately a claim under § 161(a), Brown Leasing must link the misstatements to reports filed with the Comptroller and must allege sufficiently its reliance on these misleading records. This applies with equal force to the § 1005 claim." 833 F.Supp. at 677. According to Brown Leasing, the district court erroneously required Brown Leasing to plead that it had relied upon Cosmopolitan filings regarding the questionable three-way credit transaction in order to satisfy the causation element of these two statutes. Brown Leasing seeks reversal of the judgment of dismissal and remand to the district court with instructions that it allow Brown Leasing to file a second amended complaint.

Plaintiff's reliance upon the honesty of official bank statements, either in the bank's books or in reports filed with the Comptroller of the Currency, is a necessary element of a cause of action under § 93/161 and § 503/1005. Because Brown Leasing failed to and is evidently unable to plead that it had relied to its detriment on Cosmopolitan's mischaracterization of the Cosmopolitan–Cosentino–Brown Leasing transaction, we hold that the district court did not abuse its discretion in refusing to allow Brown Leasing to file a second amended complaint.[4]

**I.**

■ In *Chesbrough v. Woodworth*, 244 U.S. 72, 37 S.Ct. 579, 61 L.Ed. 1000 (1917), the Supreme Court established the necessity of pleading reliance on the statements filed with the Comptroller of the Currency in order to satisfy the causation element and state a cause of action under the predecessor to § 93 of the NBA: "the sole primary issue is whether defendants caused or permitted to be made a statement of the bank's condition *upon which statement plaintiff relied to his injury* and which statement defendants knew was materially false." *Id.* at 77, 37 S.Ct. at 582 (emphasis added).[5] Brown Leasing does

---

the member bank, its shareholders, or any other persons shall have sustained in consequence of such violation.

18 U.S.C. § 1005 reads, in pertinent part:

**§ 1005. Bank entries, reports and transactions**

Whoever, being an officer, director, agent or employee of any Federal Reserve bank, member bank, *depository institution holding company*, national bank, insured bank, branch or agency of a foreign bank, or organization operating under section 25 or section 25(a) of the Federal Reserve Act, without authority from the directors of such bank or company, branch, agency, or organization, issues or puts in circulation any notes of such bank or company, branch, agency, or organization; or

Whoever, without such authority, makes, draws, issues, puts forth, or assigns any certificate of deposit, draft, order, bill of exchange, acceptance, note, debenture, bond, or other obligation, or mortgage, judgment or decree; or

Whoever makes any false entry in any book, report, or statement of such bank, company, branch, agency, or organization with intent to injure or defraud such bank, company, branch, agency, or organization, or any other compa-

ny, body politic or corporate, or any individual person, or to deceive any officer of such bank, company, branch, agency, or organization, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, company, branch, agency, or organization, or the Board of Governors of the Federal Reserve System; . . . . shall be fined . . . .

4. Whether the district court correctly concluded that plaintiff had a private right of action to sue for a § 93/161 violation is a difficult question which we need not decide. We assume, but only for this decision, that such a private right of action may exist.

5. Subsequent courts have cited *Chesbrough* favorably for its holding that reliance is a necessary element of a violation of officer and director liability pursuant to § 93. *See B.C. Recreational Indus. v. First Nat'l Bank*, 639 F.2d 828, 832 (1st Cir.1981) ("[T]he predecessor statute of 12 U.S.C. § 93, which prescribed the actions that the Comptroller could take for violations of the National Bank Act, was construed by the Supreme Court [in *Chesbrough*] to give a private

not satisfy this requirement by pleading requisite reliance in any of the pleadings offered before this court. It pleads only that:

> Plaintiff reasonably relied on the defendant directors to satisfy their obligations under the National Bank Act to properly record and reflect the Cosentino Credit Arrangement, including without limitation the guaranties by Cosmopolitan and its chairman, in its books and records and in its reports to federal regulators....

This pleading does not allege, as it must, that Brown Leasing relied to its detriment on *misleading statements* filed with the Comptroller of the Currency. We note that Brown Leasing could not have relied to its detriment on the mischaracterization of a financial dynamic that Brown Leasing helped create and of which it was fully cognizant. Furthermore, reliance on directors' actions is not and was never intended to be one of the elements of a cause of action under this statute. Plaintiff urges that reliance on the *actions of directors* is, for liability purposes, synonymous with reliance upon the accuracy or veracity of requisite financial filings. The statutory scheme refutes this construction.

In a supporting Motion to Reconsider and for Leave to Amend, Brown Leasing states that:

> As a direct and proximate consequence of the defendant directors' failure and refusal to properly record and report this guaranty, the FDIC as Receiver has been able to assert the *D'Oench* doctrine and 12 U.S.C. 1823(e) to bar Brown Leasing from enforcing its guaranty against Cosmopolitan's receivership estate. Accordingly, Brown Leasing has been damaged in an amount in excess of $1,950,000 by the defendant directors' willful violation of 12 U.S.C. § 161(a).

In this passage, Brown Leasing highlights the fatal flaw of its pleading. Misstatements and omissions in Cosmopolitan filings caused

the injury because they allowed the FDIC to invalidate the contractual obligations that Brown Leasing seeks to enforce, not because Brown Leasing relied to its detriment upon the accuracy of the reports filed with federal regulators. In order to state a cognizable claim under § 93/161, however, plaintiff must plead the latter. We therefore affirm the decision of the district court that Brown Leasing failed to allege relevant reliance and thus has stated no cause of action under § 93/161.

## II.

■ The causation element of a § 503/1005 violation has received less attention than that of a § 93 NBA violation. As a result, we can find no case precedent expressly addressing whether a plaintiff must plead reliance in order to state a claim under § 503/1005. Nonetheless, the identical causation language and the similarity in nature, substance, and structure of the two provisions dictate our conclusion that the detrimental reliance requirement of § 93 of the NBA also exists in § 503 of the FRA. Section 93 of the NBA states that directors who knowingly violate or who knowingly permit any other officers, agents, or servants to violate the NBA "shall be liable in [their] personal and individual capacity for all damages which the association, its shareholders, or any other person, *shall have sustained in consequence of such violation.*" (Emphasis added.) Section 503 of the FRA, by comparison, states that directors who knowingly violate or permit agents, officers, or directors knowingly to violate § 1005 of this Act "shall be held liable in [their] personal and individual capacity for all damages which the member bank, its shareholders, or any other persons *shall have sustained in consequence of such violation.*" (Emphasis added.) The similarity of the language used by the two sections is striking, especially in the italicized

cause of action to a stockholder who suffered injury by *relying* on false bank reports.") (emphasis added); *Harmsen v. Smith,* 542 F.2d 496, 503 (9th Cir.1976) ("[O]ur view, made necessary by *Chesbrough,* is that the cause of action authorized by § 93 requires reliance by the shareholder on specific and apparently proper conduct of the bank's directors which in fact conceals a

violation of a Chapter 2 section."); *Saker v. Community First Bank,* 837 F.2d 476 (6th Cir.1988) (table—unpublished opinion), 1988 WL 4463. *See also* 7 Michie on Banks and Banking ch. 15, § 132b (1989 ed.) ("The directors are liable [under § 93/161], if they knowingly authorize the making and publication of a false report, to anyone who has relied thereon to his loss.").

phrase concerning causation.[6] *Chesbrough* found that detrimental reliance was required to fulfill this causation requirement for § 93 of the NBA, and we can see no reason, nor does plaintiff offer us one, why this interpretation should not apply to the identical causation requirement codified in a clearly related statute.

We have found only one opinion which directly addresses this question. In *Adato v. Kagan*, 599 F.2d 1111 (2d Cir.1979), Judge Timbers dissented from a majority opinion which remanded the case so that further facts could be developed to determine whether the requisite "causal relation" under § 503 was present. *Id.* at 1117. He criticized the majority for two things: failing to define the causation standard under § 503, and failing then to apply the defined standard to the plaintiff's 12(b)(6) motion.[7] Although "no court, so far as we know, ha[d] passed on what sort of causation is required under this section," *Id.* at 1123, Judge Timbers believed that the causation standard should be derived from § 93 of the NBA because of its identical causation language and its similarity to § 503 in substance and nature. Citing *Chesbrough*, among other cases, Judge Timbers noted that causation under § 93 is shown only when a plaintiff has relied to his or her detriment on a defendant's false reporting. He concluded that plaintiffs must also allege detrimental reliance to state a cause of action under § 503.[8]

We agree. Because Brown Leasing's FRA claim is deficient for the same reasons that its NBA claim fails, we hold that the district

court did not abuse its discretion in denying Brown Leasing leave to file a second amended complaint. Moreover, the record fully supports the conclusion that further amendment would not cure the defect; the dismissal should stand. Accordingly, the judgment of the district court is affirmed.

---

6. The significance of the similarity of these two provisions was recognized by the Sixth Circuit in *Gaff v. Federal Deposit Ins. Corp.*, 814 F.2d 311, 316 n. 2 (6th Cir.1987). ("[T]he standing provision of the Federal Reserve Act, 12 U.S.C. § 503, contains essentially identical language; our ensuing analysis therefore applies equally to the standing issues under both § 93 [of the NBA] and § 503 [of the FRA].") The district court here followed the Sixth Circuit, *Brown Leasing*, 833 F.Supp. at 677, as did the Second Circuit in *Adato v. Kagan*, 599 F.2d 1111 (2d Cir.1979) (Timbers, J., dissenting), which favorably cited the statement in *Holman v. Cross*, 75 F.2d 909, 911 (6th Cir.1935), that "[t]he similarity of the manner in which these two provisions condition the personal civil liability of directors for violations has been recognized."

7. Judge Timbers' treatment of the causation element is more a concurrence than a dissent, as his goal was clearly to clarify an ill-defined causation requirement identified by both himself and the majority. He dissented only when he applied this standard to conclude that the plaintiff's pleadings failed to state a cause of action, meriting dismissal rather than a remand for further discovery.

8. Judge Timbers also stated in the alternative that causation might be satisfied if the plaintiff could show that the bank's illegal loan was the primary factor resulting in the diminution of value or over-all demise of plaintiff's investment in the bank. This comment and the relevant case precedent do not apply to the factual situation before us.