In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1922

CHRISTOPHER PAUL WHITE AND REFFCO II, L.P.,

*Plaintiffs-Appellants*,

*v.*

GEORGE KEELY, JOYCE MORRIS, TRICIA RAKE, TERRY SCOTT, AND MICHAEL MAURER,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:14-cv-00471-TWP-DML — **Tanya Walton Pratt**, *Judge*.

ARGUED JANUARY 6, 2016 — DECIDED FEBRUARY 29, 2016

Before POSNER and WILLIAMS, *Circuit Judges*, and PALLMEYER, *District Judge*.[*]

PALLMEYER, *District Judge*. Plaintiffs-appellants Christopher White and his company Reffco II, L.P. (collectively,

---

[*]The Honorable Rebecca R. Pallmeyer of the United States District Court for the Northern District of Illinois, sitting by designation.

"White")[1] filed suit against several current and former officers of the National Bank of Indianapolis ("NBI Employees") pursuant to the Federal Reserve Act, 12 U.S.C. § 503. That statute establishes civil liability for bank officers and directors who violate certain substantive provisions of the Federal Reserve Act and the False Entry Statute. White's complaint alleges that the NBI Employees violated the False Entry Statute, 18 U.S.C. § 1005, by falsifying official bank reports in order to cover up unauthorized transfers made from White's business accounts at the National Bank of Indianapolis ("NBI"). White claims these § 1005 violations caused him to suffer harm and that the NBI Employees are liable to him pursuant to 12 U.S.C. § 503. The district court dismissed White's complaint for failure to allege that he relied on the false statements, and White timely appeals that decision. The NBI Employees contend the appeal is frivolous and have asked for an award of sanctions pursuant to Federal Rule of Appellate Procedure 38. Because White has not pleaded that he was harmed as a consequence of the alleged § 1005 violations, we affirm the district court's dismissal of White's complaint. We further agree with defendants-appellees that White's appeal is frivolous, and therefore grant their motion for sanctions.

## I

At all relevant times, White was the sole shareholder and president of Reffco II, LLP. White was also a principal of HPT, LLC ("HPT"), a Nevada limited liability company, and

---

[1] White is the sole shareholder and president of Reffco. For simplicity sake, we refer to Appellants collectively as White.

a general partner and president of Premier Properties USA, Inc. ("Premier"), an Indiana corporation. White maintained accounts for all three companies at NBI, a member bank of the Federal Deposit Insurance Corporation ("FDIC"). Premier's NBI account had the sole purpose of paying the company's employee payroll; all of Premier's other expenses were paid from Reffco's account at NBI.

In addition to the accounts at NBI, White maintained a checking account for HPT at J.P. Morgan Chase Bank ("Chase Bank"). On January 30, 2008, White signed a check from HPT's account at Chase Bank payable to Premier in the amount of $500,000. Later that day, Premier endorsed the check to Reffco, and White deposited the check into Reffco's account at NBI. NBI credited Reffco's account for this amount.

That same morning, ADP, the payroll provider for Premier, presented NBI with three automated clearinghouse ("ACH") drafts—essentially, checks—totaling $182,897.59, against Premier's payroll account. ADP also sent a "reverse wire demand" to NBI, directing that NBI wire-transfer an additional $237,476.23 from Premier's payroll account. At the time that ADP requested this money, Premier's payroll account had a balance of just $259.39, far less than necessary to cover the ACH drafts or reverse wire demand. NBI employee Loaren Muehl accordingly transferred $425,000 to Premier's payroll account from the Reffco account, which held more than $500,000 as a result of the HPT check deposited earlier that day. NBI then paid $420,373.82 to ADP by withdrawing money from the Premier account.

The HPT check for $500,000 was subsequently returned due to insufficient funds in HPT's account at Chase Bank.

Because NBI had already honored the HPT check and used it to pay ADP, the bounced check resulted in an overdraft of Premier's payroll account in excess of $382,000.

There is a bit more to the story than what appears in White's complaint.[2] First, unable to recover the $382,000 from White, NBI closed all of his accounts and sued White in Indiana state court for check deception, check fraud, criminal mischief, and defrauding a financial institution. *See In re White*, 444 B.R. 887, 891 (S.D. Ind. Bankr. 2010). After White failed to respond to NBI's motion for summary judgment, on June 25, 2008, the state court granted summary judgment in favor of NBI. *White*, 444 B.R. at 891.

Around the same time that the state court entered its judgment, the state filed a criminal action against White, charging White with one count of fraud on a financial institution, one count of check fraud, and one count of theft. *See White v. State*, No. 49A04-1203-PC-102, 2012 WL 6709644, at *4 (Ind. App. Ct. Dec. 26, 2012). On August 18, 2009, a jury convicted White of all three counts. At sentencing, the court "merged"[3] the check fraud and theft counts into the fraud on a financial institution count, and sentenced White to one year of home detention and three years' suspended probation. *Id*. The court also ordered White to pay restitution in the amount of $382,486 to NBI. *Id.*

---

[2]    We may take judicial notice of public records, including public court documents, in ruling on a motion to dismiss under Rule 12(b)(6). *See Olson v. Champaign County, Ill.*, 784 F.3d 1093, 1097 n.1 (7th Cir. 2015); *Fox v. Am. Alt. Ins. Corp.*, 757 F.3d 680, 684 (7th Cir. 2014).

[3]    The trial court stated that it was merging the three convictions; but in fact, the court never entered judgment on the theft or check fraud verdicts. *White*, 2012 WL 6709644, at *4 n.3.

White appealed his criminal conviction, asserting that: (1) there was insufficient evidence to support his conviction for fraud on a financial institution, and (2) he received ineffective assistance of counsel. *Id.* at *1. The Indiana Court of Appeals rejected those arguments, observing:

> The evidence presented at trial established that White ordered the preparation of a check for $500,000 from the [HPT] Chase Bank account, which [he] … knew had a balance of only $1,000.00 at the time of execution of the check. … White was aware that if he did not have the money in his payroll account by 3:30 p.m. that day, his employees would not be paid. Since White had insufficient funds in his accounts to authorize a transfer between accounts to make payroll, he instructed [his business comptroller] to prepare the check written on the Chase bank account.

> Morris, NBI's vice-president, authorized the release of funds based upon the representation that a deposit would be made to NBI. White waited until the funds had been released to ADP for payroll through a wire transfer prior to informing [an NBI representative] that the check was not good and would be returned. Based upon this evidence, it is reasonable for a jury to have concluded that White acted in such a manner as to induce NBI to cover his payroll by ordering the preparation and deposit of a check he knew would not be hon-

ored. … [and] that White knowingly executed
a scheme or artifice to defraud NBI.

*Id*. at *4–5.

Shortly after entry of the state court civil judgment against White on June 25, 2008, White filed for bankruptcy protection. NBI initiated an adversary proceeding in bankruptcy court, seeking a declaration that the state court civil judgment constituted a "nondischargeable obligation" under §§ 523(a)(2)(A) and 523(a)(6) of the Bankruptcy Code. *White*, 444 B.R. at 890. The bankruptcy court granted summary judgment in favor of NBI, holding that White was estopped from re-litigating whether he committed fraud against NBI, and on November 9, 2011, entered judgment in favor of NBI and against White in the amount of $378,486.17.[4] *Id*.; *White*, 2011 WL 5509406, at *8.

Thus, in three legal proceedings, courts have found that White committed fraud. Undeterred by these determinations, White filed this civil complaint on March 26, 2014 against defendants-appellees, alleging violations of 18 U.S.C. § 1005 and 12 U.S.C. § 503. The complaint alleges that on January 30, 2008, NBI transferred $425,000 from the Reffco account to Premier's payroll account, without first obtaining authorization from Reffco or White. White claims that because he did not consent to these transfers, they were unauthorized transfers in violation of § 903 of the Electronic Fund

---

[4]    The bankruptcy court determined that White was entitled to receive a $4000 refund to Reffco's account, which NBI had not properly credited him. The court then reduced NBI's $382,486 in actual damages by this amount. *In re White*, No. 09-10289-AJM-7, 2011 WL 5509406, at *8 (Bankr. S.D. Ind. Nov. 9, 2011).

Transfer Act. White further alleges that NBI unilaterally decided to pay the $425,000 to ADP from Premier's payroll account, without consulting White or Premier, before it had knowledge that a $500,000 check would be coming from HPT, leaving Premier's payroll account with a negative balance.[5] White alleges that NBI official reports relating to these January 30, 2008 transfers omit material information about the timing of NBI's decision to pay ADP and the decision to transfer the $425,000 from the Reffco account to Premier's payroll account, and "give the appearance that it was White who ordered the transfer of the funds," when it was in fact NBI's unilateral decision to do so. These allegedly false reports, moreover, "were done with the intent to deceive other officers of NBI as well as any other person who might be reviewing the records of NBI, … because to admit that NBI had unilaterally made an unauthorized transfer of funds from one legal entity to another would be a clear violation of the law," White alleges.

According to White, these false reports were then provided to the state prosecutor, who, after receiving them, "prosecuted White for check fraud and other crimes," including "a check kiting scheme." As a consequence of NBI's false reports, White alleges, he "sustained damages in an as yet undetermined amount."

---

[5] We ordinarily presume the truth of well-pleaded factual allegations, and White's appeal fails even if we do so. We note, however, that this allegation is inconsistent with the findings of the state court and bankruptcy court, both of which found that NBI had authorized payment to ADP in reliance on White's representations that a deposit would be made to cover the payment. *See White,* 2012 WL 6709644, at *4; *White,* 2011 WL 5509406, at *2.

The NBI Employees moved to dismiss White's complaint, arguing that White failed to allege any facts that: (1) he detrimentally relied on NBI's allegedly false reports, or (2) the allegedly false reports proximately caused White's damages. The district court found that White did adequately allege proximate causation, but agreed with defendants that White failed to plead detrimental reliance. The court then granted the motion to dismiss, relying on *Brown Leasing Co. v. Cosmopolitan Bancorp, Inc.*, 42 F.3d 1112, 1116 (7th Cir. 1994), where we held that a plaintiff must show detrimental reliance in order to establish a violation of the Federal Reserve Act, 12 U.S.C. § 503, and the False Entry Statute, 18 U.S.C. § 1005. *White v. Keely*, No. 1:14-cv-00471, 2014 WL 5822862, at *2–3 (S.D. Ind. Nov. 7, 2014). White appeals the district court's decision, asserting that *Brown Leasing* was wrongly decided and should be overruled.

## II

This court reviews a district court's Rule 12(b)(6) dismissal de novo. *Charleston v. Bd. of Trustees of Univ. of Ill. at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013). In doing so, we ordinarily accept all well-pleaded factual allegations in the plaintiff's complaint as true and draw all reasonable inferences in the plaintiff's favor. *Gustafson v. Adkins*, 803 F.3d 883, 888 (7th Cir. 2015). To survive a motion to dismiss, a complaint need not contain "'detailed factual allegations,'" but it must provide "more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)). It also "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*.

Section 1005 of the False Entry Statute makes it illegal for bank officers and directors to make false reports with the intent to deceive the bank or its regulators. 18 U.S.C. § 1005. Section 503 of the Federal Reserve Act, meanwhile, creates a private cause of action for any person who has "sustained [damages] in consequence" of a violation of Section 1005. 12 U.S.C. § 503. White takes issue with our holding, in *Brown Leasing*, that in order for a private plaintiff to have "sustained [damages] in consequence" of a § 1005 violation, he or she must have detrimentally relied on the false reports in question. 42 F.3d at 1116. We need not address this challenge to *Brown Leasing*, however. White concedes that he must allege harm resulting from NBI's false statements, and we conclude that he cannot do so.

The complaint does allege that White and Reffco have sustained damages as a consequence of false reports, but that is a legal conclusion about proximate cause, and thus insufficient to state a claim. *See McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012). The district court construed White's complaint as alleging that NBI's false bank reports caused White "to be prosecuted for a check-kiting scheme and resulted in the withdrawal of money from one account to another without his authorization or knowledge." *White*, 2014 WL 5833862, at *2. White does not allege, however, that the transfer of money from his accounts without his authorization was caused by the NBI Employees' false bank reports. Indeed, White could not make this allegation because the allegedly false bank reports were not created until *after* the money transfers took place. To the extent White alleges that these transfers caused him harm, this is irrelevant to White's § 503/1005 claim; even if the allegedly unauthor-

ized transfers violated the law (as White claims they did), they did not violate § 1005.

There is even less merit in White's assertion that the NBI Employees' violation of § 1005 caused him to be prosecuted for check fraud. Rather, as the complaint suggests, and other documents in the record reveal, White was prosecuted for check fraud and for engaging in a check-kiting scheme because he wrote a $500,000 check from a bank account that he knew had insufficient funds, resulting in an overdraft of his accounts at NBI. Any allegation that bank officers' false statements caused him to be prosecuted is not facially plausible. The prosecutor charged White with depositing a bad check and then refusing to pay the resulting overdraft. Such a charge did not rest on NBI's allegedly false statements that White authorized the transfer of the money to ADP. Indeed, at oral argument, White conceded that the allegedly false reports did not prompt his prosecution for check fraud; he was subject to prosecution for knowingly presenting the bad check to NBI.

Though he did not specifically so allege, White appears to suggest that NBI's false reports caused him harm because they "ultimately led to [his] criminal conviction." This claim does not constitute a collateral attack on his criminal conviction, White insists, because "the accuracy of the [bank reports] was not necessarily decided" as part of that conviction, and his conviction could rest on presentation of a bad check to NBI alone. The inconsistency is obvious: if White could have been convicted of check fraud regardless of NBI's alleged false reports, those reports did not cause the conviction. Putting that contradiction aside, White cannot challenge the validity of his conviction by bringing a civil claim

under § 503/1005. *Hill v. Murphy*, 785 F.3d 242, 248 (7th Cir. 2015) (citing *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364 (1994)) (when "a judgment in favor of the plaintiff [in a civil suit] would necessarily imply the invalidity of his conviction or sentence," then "the complaint must be dismissed").

In short, White cannot establish that he suffered harm as a result of the alleged false statements of bank officers. Evidently recognizing the futility of his theory that he can claim those statements were the cause of his prosecution, White belatedly suggested another theory of harm. At oral argument, he asserted for the first time that the bank's false reports have prevented him from being able to continue his business as a real estate developer. "But arguments made for the first time at oral argument are waived," *Szczensy v. Ashcroft*, 358 F.3d 464, 465 (7th Cir. 2004), and because White made no mention of this harm in his complaint, we need not consider it in determining whether White adequately pleaded proximate cause. Nor do we find it facially plausible that NBI's false reports are responsible for stifling the employment opportunities of a person found guilty of fraud on a financial institution. We also note that, during oral argument, White was unable to provide the court with any information regarding the employment opportunities purportedly lost as a consequence of NBI's false reports. White suggested that this information could be obtained through discovery, but in light of the fact that the allegedly false reports were created several years ago, we are confident that White already has information about the alleged results of the NBI Employees' conduct.

**III**

Rule 38 of the Federal Rules of Appellate Procedure al-
lows us to "award just damages or single or double costs"
upon determination that an appeal is frivolous. An appeal is
frivolous "when the result is obvious or when the appellant's
argument is wholly without merit." *McCoy v. Iberdrola Re-
newables, Inc.*, 769 F.3d 535, 536–37 (7th Cir. 2014). Sanctions
are also warranted under Rule 38 "when a litigant or attor-
ney presents appellate arguments with no reasonable expec-
tations of success for the purposes of delay, harassment, or
sheer obstinacy." *In re Nora*, 778 F.3d 662, 665 (7th Cir. 2015).

Based on our review of the complaint and the legal histo-
ry of this case, which has embroiled NBI in costly litigation
with White for seven years, we find that White's appeal is
frivolous and sanctionable under Rule 38. As explained
above, White has utterly failed to allege that the NBI Em-
ployees' violation of § 1005 caused him to suffer harm. Even
when pressed by this court, White could not put forward
any cognizable theory of proximate cause, other than a po-
tential loss of employment opportunities—a claim never
mentioned before oral argument and for which White could
offer no factual support. Although White asserts that he is
not making an improper collateral attack on his criminal
conviction, this appears to be precisely what White attempts
to do with this lawsuit, in order to absolve himself of his
misconduct and place the blame on innocent parties. This is
not only frivolous, but in bad faith. Accordingly, we grant
defendants-appellees' Rule 38 motion. Defendants-appellees
may submit, within 28 days of the issuance of this opinion,
an affidavit and supporting papers specifying their damages

from this frivolous appeal. White may file a response no later than 28 days of the defendants-appellees' submission.

AFFIRMED; SANCTIONS ORDERED.