> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 10, 2020[*]
Decided November 13, 2020

**Before**

DIANE S. SYKES, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 20-1185

| | |
|---|---|
| JEFFREY FERGUSON, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 19 C 4607 |
| COOK COUNTY CORRECTIONAL FACILITY/CERMAK, et al., *Defendants-Appellees.* | Matthew F. Kennelly, *Judge.* |

## O R D E R

Jeffrey Ferguson, a pretrial detainee at Cook County Jail in Chicago, filed suit under 42 U.S.C. § 1983 alleging that the law enforcement officers and medical providers who interacted with him after his arrest failed to properly address his mental-health

---

[*] The appellees were not served with process and are not participating in this appeal. Because the appellant's brief and the record adequately present the facts and legal arguments, and oral argument would not significantly aid the court, the appeal is submitted on the appellant's brief and the record. FED. R. APP. P. 34(a)(2)(C).

needs. He primarily alleges that his deteriorating mental health and new arrests after posting bond resulted from the defendants' failure to follow through on an order to involuntarily commit him. After affording Ferguson two chances to amend his complaint, the district court dismissed the case at screening. Because Ferguson's complaint does not plausibly allege that any of the county- or city-employed defendants acted at least recklessly towards him, and the privately employed defendants are not subject to suit under § 1983, we affirm.

According to the allegations in Ferguson's complaint, which we take as true at the pleading stage, *see Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020), a Chicago police officer arrested Ferguson in 2018 for allegedly committing residential arson and took him to a neighborhood station for interrogation. Ferguson was acting erratically and making delusional statements, so the officer transferred Ferguson to Cermak Health Services at the Cook County Jail for psychiatric services. Aaliyah Balawender, a physician's assistant, treated him there for four days, under the direction of a clinical psychiatrist. Then, Ferguson was granted an individual (personal-recognizance) bond and ordered to be on house arrest until trial. Balawender, however, completed an inpatient certificate stating Ferguson presented a danger to himself and others. She sought his involuntary admission at Mt. Sinai Hospital under Illinois's civil commitment laws. A Cook County sheriff's deputy transported Ferguson to Mt. Sinai's emergency room and presented the certificate. Medical providers evaluated Ferguson upon arrival and, after determining he did not require hospitalization, discharged him. The deputy sheriff then drove him home, where he began house arrest with electronic monitoring.

Ferguson remained in a psychotic state, with no recollection of being transported from Mt. Sinai to his apartment. Alone in his apartment, his mental health continued to deteriorate. A staff member at Cermak that Ferguson believes to be Balawender called Ferguson's father to express concern that he was mentally unstable, but no further action was taken by any defendant. Soon after, Ferguson was arrested for battery and other offenses and is now in jail awaiting trial.

Ferguson brought a § 1983 claim against Cermak and Mt. Sinai Hospital, asserting that if his mental condition had been properly stabilized after his initial arrest for residential arson—his first ever felony arrest—he would not have gotten into trouble again. He later added as defendants (mostly as John or Jane Does) the arresting police officer, Balawender and the supervising psychiatrist, the sheriff's deputy who transported him to and from Mt. Sinai, and doctors and nurses at Mt. Sinai. The district

court screened the complaint under 28 U.S.C. § 1915A and, after two amendments, dismissed the case, concluding that he did not plausibly allege that any Cermak or law-enforcement defendant acted with the requisite state of mind and that the Mt. Sinai defendants were not amenable to suit under § 1983. Ferguson appeals, and we review the district court's decision de novo. *See Schillinger*, 954 F.3d at 994.

On appeal, Ferguson first takes issue with the district court's conclusion that he failed to allege that the county and city employees acted with the requisite mental state. To state a claim for deficient medical treatment in violation of the Fourteenth Amendment, pretrial detainees must plausibly allege that the care they received was "objectively unreasonable," meaning the defendants acted "purposefully, knowingly, or perhaps even recklessly." *Miranda v. County of Lake*, 900 F.3d 335, 353 (7th Cir. 2018); *see Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) (extending the objective inquiry "to all Fourteenth Amendment conditions-of-confinement claims brought by pretrial detainees"). This requires the defendants' actions rise above negligence and resemble "something akin to reckless disregard." *Miranda*, 900 F.3d at 353.

Here, the arresting officer did not act unreasonably by taking Ferguson to the police station instead of seeking immediate treatment based on his erratic behavior, as Ferguson insists he should have. Once arrested, Ferguson did not present an immediate danger to himself or others due to his confinement. *See Ortiz v. City of Chicago*, 656 F.3d 523, 531 (7th Cir. 2011) (explaining that urgent need for care is a factor arresting officers must consider). Further, he was not long at the police station. After observing him, the arresting officer attended to Ferguson's condition by transferring him directly to a facility (Cermak) where his needs could be further addressed.

Ferguson also contends that the Cermak defendants acted unreasonably by not ensuring that he was involuntarily committed, as they thought necessary. As an initial matter, one does not have a constitutional right to be committed or otherwise deprived of liberty. *Wilson v. Formigoni*, 42 F.3d 1060, 1066 (7th Cir. 1994). Once someone is released from physical custody (for instance by being bonded out), the detaining authority no longer has an obligation to provide medical services. *Collignon v. Milwaukee County*, 163 F.3d 982, 991 (7th Cir. 1998); *see Paine v. Cason*, 678 F.3d 500, 508 (7th Cir. 2012) (no decision establishes "a right to be held in custody pending medical treatment"). Regardless, the allegations do not plausibly suggest that the Cermak defendants acted recklessly. Balawender's actions reflect a concern for Ferguson and his treatment: she sought continued care at an appropriate facility and even contacted his

father to express her concern after Mt. Sinai failed to admit him. Without an ongoing duty to Ferguson, her conduct was not objectively unreasonable.

Ferguson also did not allege any circumstances suggesting that the deputy sheriff who transported him to Mt. Sinai and later to his apartment acted unreasonably. He appropriately deferred to the judgment of medical providers at Mt. Sinai, *see Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010), who determined that Ferguson need not be involuntarily committed. Though Ferguson alleges that the deputy acted recklessly by leaving him alone under house arrest despite his psychotic state, he had just been told that Ferguson did not require commitment, only medication. Though Ferguson argues that he should have been taken back to Cermak at this point, he had no such right to be taken back into physical custody for further treatment. *See Paine*, 678 F.3d at 507–08 (citing *Stevens v. City of Green Bay*, 105 F.3d 1169 (7th. Cir. 1997)).

As for the Mt. Sinai defendants, we do not agree with the district court that Ferguson's claims fail because, having posted his individual bond and having left Cermak (i.e., jail), he was not in custody at the time. Though someone on bail subject to electronic monitoring arguably is not in custody, *see Reno v. Koray*, 515 U.S. 50, 57, 63 (1995), the events at Mt. Sinai happened before Ferguson was taken home. A deputy sheriff brought a handcuffed Ferguson to and from Mt. Sinai in his cruiser, so Ferguson was in the custody of the Cook County Sheriff's Department until he was released at his apartment. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989).

Of course, the mere fact that Ferguson was in custody at the time is not sufficient to expose the Mt. Sinai defendants to § 1983 liability. *See Spencer v. Lee*, 864 F.2d 1376, 1382 (7th Cir. 1989). Dismissal was still proper because they did not act under the color of state law. *See* 42 U.S.C. § 1983. Private actors do not expose themselves to suit under § 1983 simply by being involved in the involuntary commitment process, although a private actor may function as a state actor if compelled by the state to commit a mentally ill patient or if contracted by the state to provide detainees with medical care.[1] *Spencer*, 864 F.2d at 1377; *see Miranda*, 900 F.3d 346–47. Here, the allegations do not support an inference that Mt. Sinai had to admit Ferguson. Illinois law does not force a

---

[1] As we presume the district court did, we can take judicial notice of Mt. Sinai's status as a private, not-for-profit corporation. *See White v. Keely*, 814 F.3d 883, 885 n.2 (7th Cir. 2016); *Sinai Health System's Corporation File Detail Report*, OFFICE OF THE ILLINOIS SECRETARY OF STATE, https://www.ilsos.gov/corporatellc/CorporateLlcController (last visited Nov. 10, 2020).

receiving institution to commit a patient; instead, medical professionals must conduct an independent examination and release a patient who, in their judgment, does not require commitment. *See* 405 ILCS 5/3-610. Additionally, Ferguson's complaint makes clear that Balawender had Ferguson sent to Mt. Sinai under the civil-commitment laws because he was *not* a detainee anymore, so Mt. Sinai was not acting as a contractor for detainee healthcare. *West v. Atkins*, 487 U.S. 42, 56 (1988) ("[T]he dispositive issue concerns the relationship among the State, the physician, and the prisoner.").

Finally, Ferguson argues that the defendants violated numerous Illinois statutes during the commitment process and that certain doctors and nurses at Mt. Sinai committed medical malpractice by not medicating him or admitting him. Like the district court, we express no opinion on any violations of state law, except to say that they do not correspond to violations of the Constitution necessary to form the basis for a § 1983 claim. *See Manuel v. City of Joliet*, 137 S. Ct. 911, 916 (2017); *Waubanascum v. Shawano County*, 416 F.3d 658, 670 (7th Cir. 2005). The district court dismissed any state-law claims without prejudice, so Ferguson can pursue them in state court (and it appears that he is).

We have considered Ferguson's other arguments, and none has merit.

AFFIRMED